SECOND DIVISION 

December 9, 2003

(
NUNC
 
PRO
 
TUNC
 September 30, 2003)

No. 1-02-1023

FARMERS AUTOMOBILE INSURANCE ASSOCIATION, 

Plaintiff-Appellant,

v.

SUSAN GITELSON, Not Individually but as the Special Adm'r of the Estate of Susan Spelman, Deceased,

Defendant-Appellee. 

)))))))))

)

)

Appeal from the

Circuit Court of

Cook County

No. 93 CH 5119

Honorable

Bernetta D. Bush,

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

We consider whether the trial court’s finding that defendant was entitled to underinsured motorists coverage under plaintiff’s automobile insurance policy is against the manifest weight of the evidence.  We find that it is and reverse.  

Susan Spelman was killed in a car accident on August 7, 1991, in Illinois.  On the date of the accident, Susan was living in an apartment she had leased in Elmhurst and had a full-time job in Lombard.  Susan's parents, William and Betty Spelman, were insured under an automobile insurance policy issued by plaintiff Farmers Automobile Insurance Association (Farmers).  The Spelmans lived in Wisconsin.  The Farmers policy was in effect on August 7, 1991.  The policy provided primary, uninsured and underinsured coverage.  The underinsured coverage section read:

"We will pay damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of bodily injury:  

***

'Insured' as used in this part means:

1. You or any 'family member.' "

"Family member" is defined as "a person related to you by blood, marriage, or adoption who is a resident of your household.  This includes a ward or foster child."   

The Spelmans received $100,000 from the other driver in the accident, then made a claim for $200,000 in underinsured motorists coverage on behalf of Susan's estate.  Farmers denied the claim and filed a complaint for declaratory judgment.  Farmers sought a declaration that Susan was not a resident of her parents' Wisconsin home for purposes of coverage.  Defendant, the administrator of Susan's estate, filed a counterclaim for coverage.  Defendant also filed a third-party complaint against Miles and Finch Insurance Agency, through which the Farmers policy was procured.  Defendant alleged that, even if Susan was not a resident of her parents' Wisconsin home, a binding contract of insurance existed between the agency and the Spelmans, entitling Susan to coverage.  

The parties filed cross-motions for summary judgment on the residency issue.  The trial court denied the motions.  The trial court also ruled that Farmers was not estopped from raising the residency requirement at trial.  The following evidence was then taken at trial.

Susan moved to Chicago
 on graduating from college in May 1990.  Susan's boyfriend Scott Arney and her brother Steve lived in Chicago.  Susan first lived with Steve, later moving in with a friend when Steve moved to California.  Susan then executed a one-year lease for an apartment in May 1991.  Susan shared the apartment with her cousin.  The apartment was in Elmhurst and close to Susan's full-time job in Lombard.  Susan used the Elmhurst apartment as her permanent address.  Susan used her boyfriend's mother's address before moving to Elmhurst.  

Susan had her own checking account from which she paid her rent.  Susan's parents did not transfer money to her.  Susan furnished her apartment with items from her family's home. She and her cousin also purchased new furniture.  

Susan regularly visited her family in Wisconsin.  The evidence was contradictory as to how much time Susan spent in Wisconsin.  Susan had a room in her parents' house in which she kept her bed, dresser, some clothing and other personal belongings.  Susan received mail from friends in Wisconsin, but all financial documents were sent to her Elmhurst address.  

The evidence also showed that the Spelmans began procuring insurance through the Miles and Finch Insurance Agency (Miles and Finch) in 1984.  Miles and Finch obtained all homeowners and automobile insurance as needed by the Spelmans.  The Spelmans, who had just moved to Wisconsin, obtained the Farmers policy in July 1991 when Miles and Finch told the Spelmans that their present carrier did not write insurance in Wisconsin. 

Miles and Finch spoke with Betty Spelman to complete an application for insurance with Farmers.  Betty testified that she told Miles and Finch that Susan would be living in Wisconsin.  Betty also said that Susan would be in school.  Betty did not tell Miles and Finch about Susan's Elmhurst apartment or that she would be working in Illinois.  The application was forwarded to Farmers on July 13, 1991.  The application listed Susan as a Wisconsin resident and included the statement that she would be in school with an insured vehicle.  Farmers did not independently verify the information provided, relying instead on Miles and Finch to ensure accuracy. 

Miles and Finch had authority to sign insurance applications on the Spelmans' behalf.  Miles and Finch also paid premiums for the Spelmans, billing them later.  Miles and Finch were authorized to bind coverage from 20 different insurers.  The extent of this binding authority is determined by the underwriting guidelines of the insurer.  Miles and Finch cannot bind more coverage than is offered by a policy.  The insurer decides whether to issue the policy.  

   The trial court concluded that Susan was entitled to underinsured motorists coverage based on a finding that Farmers was estopped from asserting the residency requirement.  The trial court reasoned that Miles and Finch acted as Farmers’ agent when it procured insurance for the Spelmans.  The agency relationship imputed Miles and Finch’s oral representation that the entire family was covered under the automobile policy to Farmers, estopping Farmers from relying on the residency requirement to deny underinsured motorists coverage.  The trial court also made an alternative finding that, estoppel aside, Susan could be considered a “family member” or “resident of [the Spelman] household” based on evidence that she spent "up to" 50% of her time at her parents’ Wisconsin home.   Farmers argues on appeal that the trial court erred in finding that it was estopped from asserting the residency requirement based on an agency relationship.  Farmers also challenges the trial court’s alternative finding that Susan was a resident of her parents’ household.  Last, Farmers contends that it was improperly required to bear the burden of proof at trial.

We will not reverse a trial court’s judgment unless it is against the manifest weight of the evidence.  
1350 Lakeshore Associates v. Mazur-Berg
, 339 Ill. App. 3d 618, 628, 791 N.E.2d 60 (2003).  "Against the manifest weight of the evidence" means that the opposite conclusion is "clearly evident" or the finding is "unreasonable, arbitrary or not based on the evidence."  
1350 Lakeshore
, 339 Ill. App. 3d at 628-29, citing 
Brody v. Finch University of Health Services/The Chicago Medical School
, 298 Ill. App. 3d 146, 153, 698 N.E.2d 257 (1998).  The trial court’s ruling finding coverage here is against the manifest weight of the evidence where the record does not support the trial court’s agency/estoppel analysis.  The alternative residency finding overlooked critical evidence of Susan’s intent in favor of the belief that she spent up to 50% of her time in Wisconsin.  But the record was contradictory at best as to how much time Susan spent in Wisconsin.  Susan's boyfriend estimated she spent 20% of her time in Wisconsin.  Susan's father estimated 25% and her mother guessed 25% to 50%.  Susan's cousin, with whom she shared the Elmhurst apartment, testified that Susan visited her parents only four times in the three months she and Susan lived together.  We note that the controlling factor in determining residency is intent.  
Cincinnati Insurance Co. v. Argubright
, 151 Ill. App. 3d 324, 330, 502 N.E.2d 868 (1986).  The amount of time Susan spent in Wisconsin is not dispositive, but one of many factors that must be considered in determining Susan's intent.  

Miles and Finch did not act as Farmers’ agent when it bound coverage for the Spelmans.  An insurance broker generally acts as an agent of the insured instead of the insurer.  
State Security Insurance Co. v. Burgos
, 145 Ill. 2d 423, 431, 583 N.E.2d 547 (1991).  But a broker can act as an agent of the insurer or as the agent of both the insured and insurer under certain circumstances.  
State Security
, 145 Ill. 2d at 431.  Conduct, not title, determines the relationship between the independent insurance agent, the insured and the insurer.  
A&B Freight Line, Inc. v. Ryan
, 216 Ill. App. 3d 1093, 1097, 576 N.E.2d 563 (1991).  Our analysis involves four factors: (1) who first set the agent in motion; (2) who controlled the agent’s action; (3) who paid the agent; and (4) whose interests the agent was protecting.  
A&B
, 216 Ill. App. 3d at 1097.   The determination of whether a person is acting as an agent or broker governs to whom a duty is owed.  
Zannini v. Reliance Insurance Co. of Illinois, Inc.
, 147 Ill. 2d 437, 451, 590 N.E.2d 457 (1992).  A broker owes a duty to the insured; an agent owes a duty to the insurer.  
Zannini
, 147 Ill. 2d at 451.         

Applying these four factors here, we find that the Spelmans set Miles and Finch in motion.  Evidence presented at trial demonstrated a long-existing relationship between the Spelmans and Miles and Finch.  The Spelmans used Miles and Finch to fulfill all their insurance needs.  In furtherance of this relationship, Miles and Finch routinely completed insurance applications and paid premiums on the Spelmans’ behalf.  Miles and Finch procured the Farmers policy at issue here to supply the Spelmans with the automobile insurance they requested.  

As to the second and third factors, there is testimony that Miles and Finch entered into a written agreement with Farmers under which Miles and Finch was authorized to bind coverage.  But a copy of the agreement was not introduced as evidence.  A Miles and Finch employee testified that the authority to bind coverage was limited by the type of coverage provided under the policy being issued.  To this extent, Farmers controlled Miles and Finch.  But this control was minimal insofar as Miles and Finch was authorized to bind coverage for up to 20 different insurers.   It is reasonable to infer that Farmers paid commissions to Miles and Finch.  But we accord this factor little weight under these facts.  Miles and Finch was an independent agency that solicited sales of insurance policies from a variety of insurers.  Miles and Finch had no fixed or permanent relationship with Farmers.  See, 
e.g
., 
Economy Fire & Casualty Co v. Bassett
, 170 Ill. App. 3d 765, 525 N.E.2d 539 (1988) (independent agency soliciting sales of policies from several insurers found to be agent of insured).  

The fourth factor weighs in favor of finding that Miles and Finch acted as the Spelmans' agent.  The Spelmans were longtime Miles and Finch clients.  Miles and Finch’s conduct in paying premiums and signing applications on the Spelmans' behalf demonstrates the insurance broker’s desire to foster its business relationship with the Spelmans.  Miles and Finch acted to protect the Spelmans’ interests.  Farmers’ grant of limited authority and presumed payment of commission to Miles and Finch are insufficient to overcome our conclusion that Miles and Finch acted as the Spelmans' agent in this transaction.  We need not address whether Farmers was estopped from relying on the residency requirement in light of our conclusion that Miles and Finch did not act as Farmers’ agent.  Were we to agree with the Spelmans that they were misled by Miles and Finch as to the scope of coverage afforded them under the policy, the alleged misrepresentations are not imputed to Farmers.  See 
Allstate Insurance Co. v. Tucker
, 178 Ill. App. 3d 809, 811, 533 N.E.2d 1004 (1989) (estoppel requires, 
inter alia
, proof that the insured was misled by acts or statements of the insurer or its agent).  The trial court erred in finding coverage based on an agency relationship between Farmers and Miles and Finch.  The alternative finding that Susan was a resident of her parents’ household is also unsupported by the manifest weight of the evidence.

“Resident of the household” has no fixed meaning.  
Farmers Automobile Insurance Ass'n v. Williams
, 321 Ill. App. 3d 310, 746 N.E.2d 1279 (2001).  The reasonable interpretation of the phrase requires a case-specific analysis of intent, physical presence and permanency of abode.  
Coriasco v. Hutchcraft
, 245 Ill. App. 3d 969, 971, 615 N.E.2d 64 (1993).  But the controlling factor is the intent, as evinced by the acts of the person whose residency is questioned.  
Argubright
, 151 Ill. App. 3d at 330.      

With regard to Susan’s residency, the trial court said:

“[T]he Court must make the finding that the testimony at trial was [that] Susan spent from 20% - 50% of her time at her parents’ residence.  Under these circumstances, even if the Court was basing its ruling on the residency issue rather than the estoppel issue, Susan could be considered to be a ‘family member’ or ‘resident of [the Spelmans'] household’ under the language contained in Farmers’ policy.”  

The trial court’s ruling overlooks the key factor in determining residence—intent.  The evidence here demonstrates Susan’s intent to establish and maintain a residence in Illinois.  Susan, an adult with a college degree, rented an apartment and worked a full-time job in the Chicago area.  Susan used her apartment as her permanent address and paid her rent from a checking account she had opened at a Chicago-area bank.  There was also evidence suggesting that Susan planned to marry her boyfriend Scott and remain in the Chicago area.  

Susan’s visits to her parents’ Wisconsin home, although regular, were temporary.  Susan received some mail at the Wisconsin address, but all of her financial documents and bills were sent to her Chicago-area address.  The amount of time Susan spent visiting her parents’ Wisconsin home is less than persuasive as an element of intent when considered in light of the facts set out above, all of which establish a young adult’s intent to build an independent life in the Chicago area.  The trial court’s finding, which relies exclusively on the amount of time Susan spent in Wisconsin, was against the manifest weight of the evidence.  The cases cited by the Spelmans are inapposite.

In 
Coriasco v. Hutchcraft
, 245 Ill. App. 3d 969, 615 N.E.2d 64 (1993), we found that a minor child of divorced parents had two residences for purposes of coverage.  
Coriasco
, 245 Ill. App. 3d at 972.   We reasoned that both parents' homes had an element of permanency, at least during the child's minority, insofar as the child's visits to each home were governed by a court-ordered custody arrangement.  
Coriasco
, 245 Ill. App. 3d at 972.  Our reasoning in that case is inapplicable here, where the residency of an adult is at issue.  

In 
Argubright
, we found that an adult son was a resident of his parents’ house despite evidence that the son spent part of his time at an apartment located above a family-owned-and-operated restaurant.  
Argubright
, 151 Ill. App. 3d 330-31.  Critical to our conclusion was evidence that the entire family initially lived in the apartment above the restaurant.  The parents bought a home some years later and began using the home as their primary residence.  
Argubright
, 151 Ill. App. 3d at 327.  But the family still used the apartment above the restaurant, staying there on work nights.  
Argubright
, 151 Ill. App. 3d at 327.  The son used both the house and the apartment, keeping clothes and personal belongings in both places.  We reasoned that the family’s regular and continued use of the apartment, coupled with the son’s regular presence at his parents’ home, demonstrated the son’s intent to remain part of his parents’ household for purposes of coverage:

“[W]e believe that the defendant, his brother, and his parents created a household.  In this somewhat unorthodox situation, the family had two dwellings because of the nature of the family business, yet that does not prevent them from being a household.  Household connotes membership in a family group, not attachment to a building. [The defendant's parents] along with defendant and his brother composed a single domestic establishment and shared in the privileges and duties of their common dwellings in Ottawa and Oglesby.  Each member of the family unit shared in the duties of running a family business and in turn, enjoyed the privilege of having a home that they could share on non-working days."  
Argubright
, 151 Ill. App. 3d at 331.  

The unique family living arrangements that led to our conclusion in 
Argubright
 are absent here.  The living arrangements in 
Argubright
 were centered around the operation of a family-owned business.  The apartment was the family’s sole residence while they started operating the restaurant.  The family then used the later-purchased home, staying at the apartment as necessitated by the business.  Unlike here, there was no evidence in 
Argubright
 that the son intended to establish an independent residence for himself.  By contrast, the evidence here shows that Susan was establishing herself in the Chicago area independent of her parents’ residence in Wisconsin.  Susan’s regular visits to Wisconsin cannot be equated with the son’s presence at his parents’ house in 
Argubright
.  

At issue in 
Williams
 was whether an adult son attending an out-of-state college was a resident of his mother’s Illinois household.  The trial court found that he was and granted summary judgment for the insured.  We reversed and found that summary judgment was improper:  “In sum, William’s intent, the controlling issue in this case, is completely unclear. Defendants’ ‘right to judgment is not free from doubt, and *** any motion for summary judgment should have been denied ***.' ”  
Williams
, 321 Ill. App. 3d at 317.  

We made no finding in 
Williams
 that would guide our analysis of this case, which is on review after a full trial.  

Last, Farmers claims that the trial court erred in assigning it the burden of proof at trial.  Farmers contends it was assigned the burden of proof “simply because it was the insurer.”  We disagree.  Farmers bore the burden of proof because it was the plaintiff.

The burden of proof in a civil proceeding generally rests on the party requesting relief. 
People v. Orth
, 124 Ill. 2d 326, 337, 530 N.E.2d 20 (1988).  The plaintiff in a declaratory judgment action bears the burden of proof.  
Tepper v. County of Lake
, 233 Ill. App. 3d 80, 82, 598 N.E.2d 361 (1992).  Our analysis in 
Tepper
 is instructive here.

Tepper
 involved a contract dispute over an unpaid water bill.  The utility declined to file suit, electing to place a lien on the property instead.  The customer then filed a declaratory judgment action to remove the lien.  We noted that the utility’s choice not to file suit shifted the onus onto the customer to file suit and resolve the lien.  As the party seeking relief, the customer, not the utility, bore the burden of proof.  
Tepper
, 233 Ill. App. 3d at 82.  

Here, Farmers denied coverage under its policy and filed suit, seeking a declaration that underinsured motorists coverage was unavailable to Susan.  As in 
Tepper
, Farmers’ initiation of the declaratory judgment action required it to bear the burden of proof.  

We are aware of two well-established tenets of insurance law: the insurer bears the burden of establishing that a claim falls within a provision that limits or excludes coverage; and the insured bears the burden to show that a claim falls within a policy.  It bears noting that the insurer bore the burden when it was the plaintiff (see, 
e.g
., 
Pekin Insurance Co. v. L.J. Shaw & Co.
, 291 Ill. App. 3d 888, 664 N.E.2d 853 (1997); 
State Farm Fire & Casualty Co. v. Leverton
, 314 Ill. App. 3d 1080, 732 N.E.2d 1094 (2000)), while the insured bore the burden when he was the plaintiff (see, 
e.g
., 
Village of Hoffman Estates v. Cincinnati Insurance Co
., 283 Ill. App. 3d 1011, 670 N.E.2d 874 (1996); 
Muller v. Fireman’s Fund Insurance Co.
, 289 Ill. App. 3d 719, 682 N.E.2d 331 (1997)).  This difference is consistent with the general proposition set out above that the plaintiff in a declaratory judgment action bears the burden of proof.  The trial court properly imposed the burden of proof here on Farmers. 

We find that the trial court’s finding that Farmers was estopped from asserting the residency requirement based on an agency relationship was against the manifest weight of the evidence.  The trial court’s alternative finding that Susan was a resident of her parents’ Wisconsin home was also against the manifest weight of the evidence.  Farmers properly bore the burden of proof at trial.   

The judgment of the trial court is reversed.

Reversed.

McBRIDE and GARCIA, JJ., concur.