2021 IL App (1st) 201306-U
Order filed: June 11, 2021

FIRST DISTRICT
FIFTH DIVISION

No. 1-20-1306

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| LUIS MONTANO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 MR 2487 |
| | ) | |
| ERIE INSURANCE EXCHANGE, | ) | Honorable |
| | ) | Pamela M. Meyerson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1   *Held*: Summary judgment in favor of plaintiff is affirmed, where plaintiff was a resident of his parents' household and was therefore entitled to underinsured motorist coverage.

¶ 2   Plaintiff-appellee, Luis Montano, filed this lawsuit seeking a declaratory judgment that he was entitled to underinsured motorist coverage under an insurance policy issued to his father and stepmother by defendant-appellant, Erie Insurance Exchange. The parties filed cross-motions for summary judgment, and the circuit court granted summary judgment in favor of plaintiff. For the following reasons, we affirm.

¶ 3   Plaintiff filed his complaint for declaratory judgment against Erie on February 27, 2020. Therein, he alleged that he was injured when a vehicle in which he was a passenger was involved

in a collision on April 15, 2015. Another insurer provided coverage for the collision in a total amount of $100,000 per occurrence, and plaintiff ultimately recovered $41,000 under that policy for his injuries. In addition, Erie had issued an insurance policy to plaintiff's parents, Angel and Elana Montano, that was effective at the time of the collision. That policy provided up to $250,000 per person in underinsured motorist coverage to plaintiff's parents and their "relatives." Under the policy relatives were defined as "residents" of the Montano's household related to them by—*inter alia*—"blood, marriage [or] adoption." Finally, the policy defined residents as follows:

> "a person who physically lives with "**you**" in "**your**" household on a regular basis. "**Your**" unmarried, unemancipated children attending school full time, living away from home, will be considered "**residents**" of "**your**" household."

¶ 4    After alleging that he was the son of the Montanos and a resident of their household, plaintiff asserted that Erie had improperly denied him underinsured motorist coverage on the basis that he was not a relative of the Montanos, as defined by the policy. He therefore asked the circuit court to enter a declaratory judgment that he was entitled to such coverage as a relative of the Montanos.

¶ 5    Erie filed an answer and affirmative defense to plaintiff's complaint, in which it denied plaintiff's material allegations and asserted that plaintiff was not entitled to coverage under the policy it issued to the Montanos because—at the time of the collision—plaintiff was neither physically living with the Montanos on a regular basis or living elsewhere while attending school full-time. Specifically, the affirmative defense asserted that while plaintiff had previously attended college full-time at the University of Wisconsin-Parkside, he received an academic suspension following the spring semester of 2014. Thereafter, plaintiff worked for the university providing janitorial services until December 2014, when he started working full-time as a factory worker in

Kenosha, Wisconsin. Plaintiff worked at that factory until the collision in April 2015. He had also lived alone in an apartment in Kenosha from November 2014 until the time of the collision. His parents did not co-sign the lease for that apartment, and plaintiff never returned to school as a full-time student.

¶ 6    Plaintiff filed an answer to the affirmative defense in which he admitted Erie's factual allegations but denied its legal conclusions. Erie then filed a motion for summary judgment. Attached to the motion was a transcript of an examination under oath plaintiff sat for on December 7, 2017. Therein, plaintiff generally confirmed the factual allegations contained in Erie's affirmative defense.

¶ 7    In addition, however, plaintiff stated during his examination under oath that he lived with his father in Wisconsin when he graduated high school in 2012. He then attended college in Wisconsin for two years, living on campus except for his return to his father's home for the summer break following his first year, until he received an academic suspension following the spring semester of 2014. After the collision and a more than two-month stay in the hospital, plaintiff returned to live with his father. By that time, plaintiff's father had moved to Naperville, Illinois.

¶ 8    Plaintiff responded by filing a response and cross-motion for summary judgment, attaching an affidavit completed by plaintiff. Therein, he averred that prior to college and during the summer after his first year, he lived in Wisconsin with his father and stepmother. He only found "temporary" employment and rented a "temporary" apartment in Wisconsin until he would be able to apply to re-enroll in college following his academic suspension in the fall of 2015. Plaintiff believed that obtaining a job would improve his prospects to be readmitted to college. After completing his education, he intended to return to live with his parents. Plaintiff continued to

"spend a considerable amount of time with [his] family when they lived in Wisconsin, and in Naperville" and always had a key to the family home in each state.

¶ 9    As to the family's move to Illinois, plaintiff averred that he moved to Naperville in November 2014 with his father, stepmother, and siblings, after his father started working in Oak Brook, Illinois. The family first lived in a rental home while their permanent home was under construction. Plaintiff had his own bedroom in each house, and the newly constructed home had a fifth bedroom with a private bathroom that was intended for plaintiff's use and which he still occupied. Plaintiff washed his laundry in Naperville, most of his possessions were kept in his family home in Naperville, and he "lived with [his] family there on many weekends." Plaintiff also "spent the Christmas/New Year's holidays in 2014 in [the] family home in Naperville." Finally, plaintiff explained that he was financially dependent upon his father, he received his mail at his family's home, and used the address of his family home as his permanent address for his driver's license, voter registration, bank accounts, tax returns, college correspondence and employment.

¶ 10    The parties completed briefing on the cross-motions and following a hearing held on November 4, 2020, the circuit court entered an order finding that plaintiff was entitled to underinsured motorist coverage under the Erie policy and granted summary judgment in plaintiff's favor. Erie timely appealed, contending that the circuit court improperly denied its motion for summary judgment.

¶ 11    In construing an insurance policy, a court determines the intent of the parties to the contract by construing the policy as a whole, with due regard to the risk undertaken, the subject matter that is insured and the purposes of the contract. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). Where the words in the policy are clear and unambiguous, "a court must afford them their *plain, ordinary, and popular meaning*." (Emphasis in original.) *Id*.

However, any ambiguities in the language of an insurance policy will be interpreted in favor of the insured. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006). "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law." *Konami (America), Inc. v. Hartford Insurance Co. of Illinois*, 326 Ill. App. 3d 874, 877 (2002). We review such an issue *de novo*. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004).

¶ 12    As "[t]he construction of an insurance policy" and the determination of the rights and obligations thereunder are questions of law for the court, the issues are appropriately addressed by way of summary judgment. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2020). Since the parties here filed cross-motions for summary judgment, they conceded that no material question of fact exists and that there is only a question of law which the court may decide on the basis of the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We review a court's decision as to cross-motions for summary judgment *de novo*. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 13    On appeal, the parties vigorously debate issues such as plaintiff's intent with respect to his permanent residence and returning to school, whether he can have more than one legal residence, whether he was still a full-time student despite his academic suspension, the exact time at which plaintiff had to be a resident of the Montanos' household to be entitled to coverage, and more. We need not address all these issues. Rather, we note the uncontested fact that plaintiff—the son of Angel and stepson of Elana—was related to the Montanos by "blood, marriage [or] adoption." As

such, we may resolve the question of plaintiff's entitlement to coverage under Erie's policy by answering the simple question of whether—at the time of the collision—plaintiff was a resident of the Montanos' household because he physically lived with them on a regular basis.

¶ 14    In answering this question, we first reject Erie's factual contention that plaintiff "never returned to his parents' home after moving into his apartment and before the accident." This contention misreads plaintiff's testimony during his examination under oath, in which plaintiff merely acknowledged that he "stay[ed]" at his apartment until the collision, never returning thereafter but rather returning to his parents' home after being released from the hospital. It also ignores plaintiff's affidavit, in which he specifically discusses the various times he stayed at the family home in Naperville prior to the collision.

¶ 15    We also find several cases cited by the parties to be irrelevant. Erie cites to cases that have found no coverage was available under certain circumstances, pursuant to policy language that was found to unambiguously restrict insurance coverage to those related to the insured that "live[] with" the insured (S*tate Farm Mutual Automobile Insurance Co. v. Taussig*, 227 Ill. App. 3d 913, 915 (1992)) or to relatives that were a "resident of [the insured's] household" (*Farmers Automobile Insurance Ass'n v. Gitelson*, 344 Ill. App. 3d 888, 890 (2003)). Plaintiff cites to cases finding coverage was available under certain circumstances, pursuant to policy language—often found to be ambiguous—that restricted insurance coverage to those related to the insured that "live[] with" the insured (*Casolari v. Pipkins*, 253 Ill. App. 3d 265, 268 (1993); *Murphy v. State Farm Automobile Insurance Co.*, 234 Ill. App. 3d 222, 226 (1992); *State Farm Automobile Insurance Co. v. Reinhardt*, 253 Ill. App. 3d 823, 826 (1994)), or to a "resident of the same household" as the insured (*Coriasco v. Hutchcraft*, 245 Ill. App. 3d 969, 970-71 (1993). However, none of these cases presented the exact circumstances presented here, nor did they address the specific policy

language contained in the Erie policy requiring plaintiff to "physically live[]" in the Montanos' household on a "regular" basis.

¶ 16    Our primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). The word "regular" is not further defined in Erie's policy. "Where a term in an insurance policy is not defined, we afford that term its plain, ordinary and popular meaning, *i.e.*, we look to its dictionary definition." *Id*. at 436. "If a term has multiple reasonable definitions or is subject to more than one reasonable interpretation within the context in which it appears *** the term is ambiguous," and such ambiguous terms "will be strictly construed against the insurer who drafted the policies." *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 43.

¶ 17    The word "regular" can be defined strictly as an event or action that occurs in a fixed pattern, with even or similar amounts of time between one and the next. Collins Dictionary, www.collinsdictionary.com/us/dictionary/english/regular (last visited June 4, 2021) ("Regular events have equal amounts of time between them, so that they happen, for example, at the same time each day or each week."); Cambridge Dictionary, www.dictionary.cambridge.org/us/ dictionary/english/regular (last visited June 4, 2021) (defining regular as "existing or happening repeatedly in a fixed pattern, with equal or similar amounts of space or time between one and the next; even."). However, "regular" can also be defined more broadly to simply mean "often." Collins Dictionary, www.collinsdictionary.com/us/dictionary/ english/regular (last visited June 4, 2021) ("Regular events happen often."); Cambridge Dictionary, www.dictionary.cambridge.org/ us/ dictionary/english/regular (last visited June 4, 2021) (defining regular as "happening or doing something often."). Considering these multiple, reasonable definitions, the word "regular" as used

in the Erie policy is ambiguous and must be strictly construed against Erie.

¶ 18    Here, it is uncontested that plaintiff did not physically live in the Montanos' household full-time at the time of the collision. However, it is also uncontested that plaintiff always had a key to the family home in Naperville, had his own room in that home with an attached bathroom, kept most of his possessions there, and washed his laundry there. In addition, while plaintiff had his own apartment in Wisconsin at the time of the collision, he also spent a "considerable amount of time with [his] family" in Naperville, "lived with [his] family there on many weekends," and spent the Christmas/New Year's holidays in 2014 in [the] family home in Naperville." While these facts might not be sufficient to satisfy the narrowest definition of the word "regular," they clearly establish that plaintiff physically lived in the Montanos' household "often" at the time of the collision. Because we must strictly construe the ambiguous language in the policy against Erie, we conclude that the circuit court properly concluded that plaintiff was entitled to underinsured motorist coverage and properly granted summary judgment in his favor.

¶ 19    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 20    Affirmed.