SIXTH DIVISION

June 30, 2004

No. 1-03-0610

KARRY and TOBEY YOUNG,

Plaintiffs-Appellants,

v.

ALLSTATE INSURANCE COMPANY, 

Defendant-Appellee.

 

)))))))))   

Appeal from the

Circuit Court of

Cook County

Honorable

Paddy H. McNamara,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiffs Karry and Tobey Young appeal from the trial court's dismissal of the 
respondeat superior 
and estoppel counts in plaintiffs' second amended complaint.  Plaintiffs also appeal the trial court's granting of summary judgment in favor of defendant Allstate Insurance Company (Allstate) and denial of partial summary judgment in favor of plaintiffs.  This case arose due to a dispute between the parties regarding the type of insurance policy issued to plaintiffs and the amount of coverage provided under that policy.  In this appeal, plaintiffs first contend that the trial court erroneously ruled that Allstate issued an actual cash value policy and not a stated value policy to the plaintiffs.  Plaintiffs next contend that the trial court erroneously dismissed the
 respondeat superior
 and estoppel counts with prejudice because the dismissal of these counts was based on the trial court's erroneous ruling that Allstate issued an actual cash value policy.  Plaintiffs also contend that the trial court erred in granting Allstate's motion for summary judgment based on the inclusion of an appraisal clause in the policy and that section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2000)) preempts the Consumer Fraud and Deceptive Practices Act (Consumer Fraud Act) (815 ILCS 505/1 
et
 
seq.
 (West 2000)) count.  Plaintiffs further contend that the trial court erred in denying plaintiffs' motion for partial summary judgment because Allstate's failure to timely pay the undisputed portion of the insurance claim was unreasonable and vexatious.  For the reasons stated below, we affirm the judgment of the trial court.

I.  BACKGROUND

The following facts are relevant to this appeal.  In 1996, plaintiffs purchased a 1976 Cadillac Eldorado convertible and fully restored the vehicle.  Plaintiffs negotiated and procured a physical-damage insurance policy for the vehicle through Allstate's agent, Jacqueline Walton (Walton).
(footnote: 1)  Plaintiffs informed Walton that the appraised value of the restored vehicle was approximately $30,000.  Walton did not request additional information regarding the vehicle's value or conduct any further investigation concerning the vehicle's condition.

Plaintiffs insured seven vehicles with Allstate under the policy at issue in this appeal.  The vehicles covered included "classic" and typical vehicles.  The 1976 Cadillac and 1953 Mercedes would be considered "classic" vehicles.  The 1994 Lexus, 1997 Chevrolet truck, 1986 Jaguar, 1995 Corvette and 1997 Oldsmobile mini-van would be considered typical vehicles.  The auto collision and auto comprehensive coverage limits relating to the 1995 Corvette were actual cash value; for the 1976 Cadillac, those limits were $30,000 or actual cash value; and for the 1953 Mercedes, those limits were $50,000 or actual cash value.

The 1976 Cadillac Eldorado was involved in a collision on July 19, 1998.  On or about
 
August 5, 1998, Allstate declared the vehicle a "total loss."  Plaintiffs submitted a claim to Allstate for $30,000 in benefits.  Allstate responded that the policy covered the actual cash value of the vehicle at the time of loss.  Allstate offered plaintiffs $8,685 to settle the property damage claim.  Plaintiffs responded that they restored the vehicle and believed they purchased a stated value policy insuring the vehicle for $30,000.  Allstate then offered plaintiffs $9,600 to settle the claim.  Plaintiffs rejected this offer.  Both parties arranged for the vehicle's appraisal, which resulted in an appraised value of $12,000 on October 2, 1998.  On June 28, 2000, Allstate sent plaintiffs' counsel a check for $12,000 as satisfaction of the undisputed amount.

Plaintiffs retained counsel because they insisted that the policy provided stated value coverage of $30,000, but Allstate insisted it was liable for the vehicle's actual cash value at the time of loss, which was appraised at $12,000. 

Plaintiffs alternatively contended that if Allstate issued an actual cash value policy, then Walton was negligent for failing to procure the type and amount of coverage requested.  Plaintiffs contacted Allstate and requested payment of $30,000 for the claim based on its agent's negligent actions.  Allstate denied the claim.  As a result, plaintiffs filed the underlying suit.

On July 19, 1999, plaintiffs filed a complaint against Allstate and Walton alleging breach of contract (count I), negligence (count II) and bad faith (count III).  On February 1, 2000, plaintiffs filed an amended complaint alleging breach of contract (count I), negligence (count II), bad faith (count III), estoppel (count IV) and consumer fraud (count V).  On November 14, 2000, plaintiffs filed their second amended complaint alleging breach of contract (count I), 
respondeat superior 
(count II), bad faith (count III), estoppel (count IV) and consumer fraud (count V).  On March 12, 2001, Allstate filed its answer and affirmative defenses to the bad faith and consumer fraud counts of plaintiffs' second amended complaint, and a motion to strike and dismiss the 
respondeat superior
 and estoppel counts.  

On August 9, 2001, the trial court issued a memorandum opinion and order dismissing the 
respondeat superior
 and estoppel counts with prejudice.  On July 2, 2002, Allstate filed its motion for summary judgment.  On August 1, 2002, plaintiffs filed their motion for partial summary judgment.  On January 22, 2003, the trial court denied plaintiffs' motion for partial summary judgment and granted summary judgment in favor of Allstate and against plaintiffs on all pending counts of plaintiffs' second amended complaint.  Plaintiffs timely appealed.

II.  ANALYSIS

Plaintiffs raise three issues on appeal.  First, plaintiffs contend that the trial court erred in finding that the policy was an actual cash value policy and not a stated value policy.  Second, plaintiffs contend that the trial court erred in dismissing the 
respondeat superior
 and estoppel counts with prejudice.  Finally, plaintiffs contend that the trial court erred in granting Allstate's motion for summary judgment and denying plaintiffs' motion for partial summary judgment.  

A.  Nature of the Policy Issued

Plaintiffs' first issue on appeal is that the trial court erroneously held plaintiffs procured an actual cash value and not a stated value policy from Allstate.  Plaintiffs' contention that a stated value policy was procured rests with documents contained in the record, primarily four documents generated by Allstate and the language included on the policy declaration page.  First, plaintiffs rely on a letter dated December 17, 1998, written by Allstate that stated in part: "[W]e believe Jacqueline Walton acted in good faith when she sold a stated value policy to Mr. Young.  ***  If you have any further questions regarding our agent, or the stated value policy please contact me at 630-932-6124."  Second, plaintiffs rely on a claim diary entry dated September 10, 1998, regarding an internal conversation with Walton concerning the loss that stated in part: "[A]sked why she chose stated value policy over regular collision for the car.  She states insd stated it was a classic and he had it appraised at $30,000 ***."  Plaintiffs next rely on the policy declaration pages, which provide different collision and comprehensive coverage for the two "classic" vehicles and the other typical vehicles.  Plaintiffs contend that the premium they paid for the 1976 Cadillac was comparable to the premium for the 1995 Corvette.  Plaintiffs suggest this creates an inference that Allstate valued the vehicle for premium purposes at a value in excess of $30,000.  Finally, plaintiffs compare Allstate's underwriting file for the 1995 Corvette, which leaves the stated value line blank, whereas the stated value line relating to the 1976 Cadillac was filled in with a value of $30,000.  Plaintiffs contend that these four documents conclusively established that Allstate sold plaintiffs a stated value policy.

In response, Allstate contends that the policy's language is unambiguous and the policy is an actual cash value policy.  Allstate claims the policy is unambiguous because it contained the words "$30,000 or actual cash value" under the "Limits" heading on the declaration page.  Allstate also claims that if a court can determine the meaning of the language used in a contract, the express provisions govern and no construction or inquiry regarding intent is required.  
Brzozowski v. Northern Trust Co.
, 248 Ill. App. 3d 95, 99, 618 N.E.2d 405, 409 (1993).  Allstate further claims that under the "four corners rule," a written agreement must be presumed to speak the intention of the parties who signed it and the intentions regarding its execution must be determined from the language used, unchanged by extrinsic evidence.  
Air Safety, Inc. v. Teachers Realty Corp.
, 185 Ill. 2d 457, 462, 706 N.E.2d 882, 884 (1999).  Since the language used in the policy is unambiguous, Allstate claims, it is unnecessary to consider the documents plaintiffs identified in their brief, such as the letter dated December 17, 1998, and internal diary notes, to determine the policy's meaning.  

Allstate further responds that several provisions included in the policy are inconsistent and contradictory with those included in a stated value policy.  Allstate claims that interpreting the policy as a stated value policy renders multiple provisions of the contract meaningless and the word "limit" on the declaration page must be ignored.  Specifically, Allstate points to the limits of liability provision, which states:  

Limits of Liability

Our limit of liability is the actual cash value of the property or damaged part of the property at the time of loss.  The actual cash value will be reduced by the deductible for each coverage as shown on the policy declarations.  However, our liability will not exceed what it would cost to repair or replace the property or part with other of like kind and quality.  Our limit for loss to any covered trailer not described on the policy declarations is $500. 

Allstate also points to the right to appraisal provision, which states:

Right to Appraisal

Both you and Allstate have a right to demand an appraisal of the loss.  Each will appoint and pay a qualified appraiser.  Other appraisal expenses will be shared equally.  The two appraisers, or a judge of record, will choose an umpire.  Each appraiser will state the actual cash value and the amount of loss.  If they disagree, they'll submit their differences to the umpire.  A written decision by any two of these three persons will determine the amount of loss.  

Allstate claims that characterizing the policy as a stated value policy renders the right to appraisal provision and plaintiffs' participation in the appraisal process meaningless because an appraisal is unnecessary if Allstate's coverage liability is fixed at $30,000 as plaintiffs claim.  Allstate maintains the only reasonable interpretation of the phrase "Limits: $30,000 or actual cash value" is that Allstate will pay the vehicle's actual cash value not to exceed $30,000, which is consistent with the policy's limits of liability and right to appraisal provisions.  Allstate also rejects plaintiffs' interpretation of the word "limit" as meaning a minimum amount of indemnity.  Allstate claims that the policy is an actual cash value policy as identified by the clear and unambiguous language used in the policy.

Unambiguous clauses must be enforced according to their terms.  
Jones v. State Farm Mutual Automobile Insurance Co.
, 289 Ill. App. 3d 903, 910, 682 N.E.2d 238, 244 (1997).  Suggestions of creative possibilities regarding the interpretation of a contract do not render it ambiguous, but rather, the relevant inquiry to determine if ambiguity exists is whether the contract's provisions are subject to more than one reasonable interpretation.  See 
Hall v. General Casualty Co. of Illinois
, 328 Ill. App. 3d 655, 658, 766 N.E.2d 680, 682 (2002); 
Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.
, 166 Ill.2d 520, 529, 655 N.E.2d 842, 846 (1995).  Controversy between the parties regarding the meaning of a provision also does not render the provision ambiguous.  See 
General Insurance Co. of America v. Robert B. McManus, Inc.
, 272 Ill. App. 3d 510, 514, 650 N.E.2d 1080, 1083 (1995).  When interpreting contract provisions, words are given their plain and ordinary meaning and courts should refrain from adopting interpretations resulting in distortions and creating ambiguities where none exist.  
Straus v. Allstate Insurance Co.
, 62 Ill. App. 3d 289, 293-94, 378 N.E.2d 1308, 1311-12 (1978). 
 
Interpreting a contract requires an examination of the complete document and not an isolated part or parts.  
Straus
, 62 Ill. App. 3d at 292, 378 N.E.2d at 1311. 
 
A stated value policy differs from an actual cash value policy because the parties predetermine the insurance company's liability, whereas the company's liability under an actual cash value policy is determined after the loss based on the vehicle's actual cash value immediately before the loss.  
Allied American Insurance Co. v. Washburn, 
159 Ill. App. 3d 1035, 1039, 513 N.E.2d 50, 53 (1987).

We agree with Allstate that the policy is unambiguous and is an actual cash value policy.  We note that stated under the "Limits" heading in the policy's declaration is "$30,000 or actual cash value."  We also take note of the policy's language set forth in the "Limits of Liability" provision, which states in part: "Our limit of liability is the actual cash value of the property or damaged part of the property at the time of loss.  ***  However, our liability will not exceed what it would cost to repair or replace the property or part with other of like kind and quality."  We conclude that the language in this provision, taken in conjunction with the language on the declaration page, supports Allstate's interpretation that the policy is an actual cash value policy.  We also agree with Allstate that plaintiffs' interpretation of the policy would render the right to appraisal provision meaningless and would be inconsistent with plaintiffs' actions of participating in an appraisal and then contesting the appraised value.  Moreover, if we were to adopt plaintiffs' interpretation of the policy, the words "Limits" on the declaration page and "actual cash value" on the declaration page and in the limit of liability provision would be rendered superfluous. 

We are cognizant that when interpreting a contract, the words used are given their plain and ordinary meaning.  
Straus
, 62 Ill. App. 3d at 293-94, 378 N.E.2d at 1312.  The plain and ordinary meaning of the word "limit" is the "prescribed maximum or minimum amount, quantity, or number."  Webster's Third New International Dictionary 1312 (1993).  The word "maximum" is defined as "the greatest quantity or value attainable in a given case."  Webster's Third New International Dictionary 1396 (1993).  The word "liability" is defined as "the quality or state of being liable."  Webster's Third New International Dictionary 1302 (1993).  "Liable" is defined as "bound or obligated according to law or equity."  Webster's Third New International Dictionary, 1302 (1993).  Based on the plain and ordinary definition of the words "limit," "maximum" and "liability," we agree with Allstate and the trial court's interpretation that Allstate's liability under the policy is actual cash value and the greatest amount of its liability is $30,000 or actual cash value.  See 
Seckinger-Lee Co. v. Allstate Insurance Co.
, 32 F. Supp. 2d 1348,1351-52 (N.D. Ga. 1998).  Moreover, using the ordinary definition of those words in the context of an insurance policy supports Allstate's interpretation that the most Allstate will pay to settle a claim is the actual cash value of the vehicle not to exceed $30,000.  Despite plaintiffs' contention, inserting words or changing the order of words is not required to reach this conclusion; rather, we must look to the definition and meaning of the words used in the policy to interpret and understand the coverage provided under the policy.  Again, to adopt plaintiffs' interpretation of the policy would require us to ignore the plain and ordinary meaning of the following words purposely inserted in the policy: "our limit of liability is the actual cash value" and the word "limit" on the declaration page.  Accordingly, we reject plaintiffs' interpretation of the policy as a stated value policy.

We are also mindful that an insurance policy is to be interpreted by examining the complete document and not isolated parts.  
Straus
, 62 Ill. App. 3d at 292, 378 N.E.2d at 1311.  Examining the complete policy, including the policy's declaration, the limit of liability provision and the right to appraisal provision, we fail to detect ambiguity in the meaning of the words used in the complete policy.  While we acknowledge plaintiffs' interpretation of the policy, their interpretation creates ambiguity where it does not exist.  See 
Straus
, 62 Ill. App. 3d at 293-94, 378 N.E.2d at 1312.  Plaintiffs' mistaken belief that the actual cash value of the vehicle was $30,000 also does not create an ambiguity regarding the policy's meaning.  Because we conclude that the meaning of the policy can be determined on the face of the policy, it is unnecessary to consider the extrinsic documents plaintiffs point to in their brief generated subsequent to the issuance of the policy to assist in determining the policy's meaning.  
Air Safety, Inc.
, 185 Ill. 2d at 462-63, 706 N.E.2d at 884.  Based on the ordinary, plain meaning of the words used in the policy, we agree with the trial court's finding that Allstate issued an actual cash value policy to plaintiffs.

B.  Motion to Dismiss

Plaintiffs' next issue on appeal is that the trial court erred in dismissing the 
respondeat superior
 and estoppel counts of the second amended complaint with prejudice because the ruling was based upon the trial court’s erroneous finding that the policy was unambiguously an actual cash value policy.  In deciding a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2000)), the court "must accept as true all well-pleaded facts in the complaint and all reasonable inferences which can be drawn therefrom."  
Feltmeier v. Feltmeier, 
207 Ill. 2d 263, 267, 798 N.E.2d 75, 79 (2003).  The court should grant the motion if the complaint fails to state a cause of action on which relief can be granted after viewing the allegations in the complaint in light most favorable to the plaintiff.  
Feltmeier
,
 
207 Ill. 2d at 267, 798 N.E.2d at 79
.  
We review a section 2-615 dismissal 
de novo
.  
Weis v. State Farm Mutual Automobile Insurance Co.
, 333 Ill. App. 3d 402, 406, 776 N.E.2d 309, 311 (2002).

Plaintiffs contend as a preliminary matter that the trial court erred in finding that Walton did not breach a duty to plaintiffs because the trial court based this finding on its prior erroneous finding that the policy’s language was unambiguously an actual cash value policy. 
 
Before addressing the elements of the
 respondeat superior
 and estoppel counts, plaintiffs in their brief addressed the trial court’s finding that the policy’s language was not ambiguous.  Plaintiffs contend that the discrepancies in the policy language and declarations, in conjunction with Allstate’s letter confirming Walton sold plaintiffs a stated value policy, should have been interpreted and construed in favor of plaintiffs.  

Plaintiffs set forth six contentions demonstrating that the policy was ambiguous and misleading and therefore should have been construed in plaintiffs' favor.  For brevity purposes, each of these six contentions is summarized as follows: (1) according to the general rules of contract construction, words should be given their plain, ordinary and popular meaning and words susceptible to more than one reasonable interpretation should be construed in favor of the insured and against the insurer that drafted the policy; (2) more than one reasonable interpretation of the phrase "$30,000 or actual cash value" is possible; (3) ambiguity in the policy should have been construed in favor of plaintiffs; (4) use of the conjunction "or" in the phrase "$30,000 or actual cash value" means that each part of the phrase should be taken separately; (5) the trial court is prohibited from rewriting insurance policies by reversing the order in which key terms appear in the policy, ignoring the disjunctive "or" and substituting the conjunctive and limiting phrase "not to exceed"; and (6) a policyholder’s obligation to read and inform the insurer of mistakes in the policy does not apply to ambiguous policy terms.  Plaintiffs argue that these six contentions are sufficient to support a finding that the trial court erred in ruling the policy’s language was unambiguous and that judgment should have been entered in favor of plaintiffs.

We recognize and have considered each of plaintiffs' contentions and the underlying rules of law set forth by plaintiffs.  These contentions raised by plaintiffs are related to plaintiffs' first issue on appeal regarding whether an actual cash value or stated value policy was issued.  A re-analysis of the policy's language is not now necessary, and we accordingly adopt and restate our conclusion that the policy provided for actual cash value coverage and was not ambiguous.  

Plaintiffs next contend that the trial court erred in dismissing the 
respondeat superior
 count because a cause of action for 
respondeat superior 
based on negligence was sufficiently pled.  To establish a cause of action based on negligence, a plaintiff must demonstrate: (1) the existence of a duty owed to plaintiff; (2) a breach of the duty; and (3) injury proximately resulting from the breach.  
Bajwa v. Metropolitan Life Insurance Co., 
208 Ill. 2d 414, 421, 804 N.E.2d 519, 526 (2004).  An agent’s duties to a prospective insured are to promptly evaluate the insurance application by providing coverage for the applicant or notifying the applicant of rejection of coverage to prevent the insured from being harmed by a delay in seeking coverage elsewhere or from feeling a false sense of security.  
Wheaton National Bank v. Dudek
, 59 Ill. App. 3d 970, 972, 376 N.E.2d 633, 635 (1978).

Plaintiffs claim that the trial court erred in finding that Walton, the insurance agent, did not breach a duty to plaintiffs.  An independent insurance agent may owe duties to both the insurance company and insured.  
A&B Freight Line, Inc. v. Ryan
, 216 Ill. App. 3d 1093, 1097, 576 N.E.2d 563, 566 (1991).  When an insurance agent's negligent actions cause damage to an insured, the agent can be liable to the insured for the loss sustained.  See 
Perelman v. Fisher
, 298 Ill. App. 3d 1007, 1011-12, 700 N.E.2d 189, 192 (1998).  To recover for the loss sustained, the insured must prove that the agent negligently performed his duty to secure the type of coverage requested by the insured.  
Perelman
, 298 Ill. App. 3d at 1012, 700 N.E.2d at 192.  Plaintiffs contend that Walton, by her failure to procure for plaintiffs the stated value coverage negotiated, promised and paid for, breached her duty to plaintiffs.  Plaintiffs claim that they sufficiently pled a cause of action for 
respondeat superior 
based on negligence because Walton had a duty of care to plaintiffs that was breached by her failure to provide a stated value policy for plaintiffs, plaintiffs were damaged as a result of the breach, and Allstate conceded that Walton was acting within the scope of her employment and was Allstate's agent.  

Plaintiffs also claim that the trial court erred in dismissing the 
respondeat superior 
count based on plaintiffs' alleged failure to read the policy because the failure to read a policy is “never contributory negligence as a matter of law
.
”  
Black v. Illinois Fair Plan Ass'n
, 87 Ill. App. 3d 1106, 1111, 409 N.E.2d 549, 553 (1980).  In support of this claim, plaintiffs rely on 
Black v. Illinois Fair Plan Ass'n
, 87 Ill. App. 3d 1106, 1111, 409 N.E.2d 549, 553 (1980),
 
and 
Perelman v. Fisher
, 298 Ill. App. 3d 1007, 700 N.E.2d 189 (1998).  In 
Black, 
the insured procured an insurance policy from an insurance broker who became the insured's agent thereby creating a fiduciary relationship between the insurance broker and the insured.  See 
Black
, 87 Ill. App. 3d at 1109-10, 409 N.E.2d at 551-52.  This court in 
Black 
held that due to the insurance agent's fiduciary duty to the insured and because the policy was not being altered to prejudice a party to the contract, the insured's failure to read the contract and identify errors in its basic terms could never be contributory negligence as a matter of law.  
Black
, 87 Ill. App. 3d at 1111, 409 N.E.2d at 553.  Adopting its earlier holding in 
Black,
 this court in 
Perelman
 held that an insured's failure to read and understand the terms in a policy procured by his broker was not an absolute bar to the insured's right to recover against his broker based on the broker's breach of a fiduciary duty.  
Perelman
, 298 Ill. App. 3d at 1013, 700 N.E.2d at 193.  Relying on 
Perelman 
and 
Black
, plaintiffs contend that the trial court erred in dismissing the 
respondeat superior 
count due to plaintiffs' failure to read the policy and identify discrepancies between their understanding of coverage and the coverage provided under the policy.

Allstate responds that the trial court properly dismissed the 
respondeat superior 
count because Allstate did not owe a duty to plaintiffs.  Allstate claims plaintiffs' pleadings demonstrate Allstate provided plaintiffs with insurance coverage because the pleadings stated in part: "in the valid and enforceable policy attached hereto as Exhibit 2."  If an exhibit attached to a pleading is inconsistent with the exhibit, the exhibit controls over the pleading.  
Johnson v. Johnson
, 244 Ill. App. 3d 518, 523, 614 N.E.2d 348, 352 (1993).  Allstate contends that the exhibit attached to plaintiffs' pleading was unambiguous regarding the type of coverage provided under the policy.  Allstate also contends that plaintiffs had the responsibility to read the policy and to inform the insurer of any discrepancy prior to filing a claim.  
Floral Consultants, Ltd. v. Hanover Insurance Co.
, 128 Ill. App. 3d 173, 176, 470 N.E.2d 527, 529 (1984).  

We agree with Allstate that the cause of action for 
respondeat superior 
was not sufficiently pled because plaintiffs failed to set forth a duty Walton owed to plaintiffs.  "A broker owes a duty to the insured; an agent owes a duty to the insurer."  
Farmers Automobile Insurance Ass'n v. Gitelson
, 344 Ill. App. 3d 888, 892, 801 N.E.2d 1064, 1068 (2003).  An independent broker may act as agent of the insurer and insured in certain circumstances.  
Gitelson
, 344 Ill. App. 3d at 892, 801 N.E.2d at 1068.  Determining whether a person is acting as agent or broker identifies to whom the individual owes a duty.  
Gitelson
, 344 Ill. App. 3d at 892, 801 N.E.2d at 1068.  Such a determination requires analysis of the following four factors: "(1) who first set the agent in motion; (2) who controlled the agent's action; (3) who paid the agent; and (4) whose interests the agent was protecting."  
Gitelson
, 344 Ill. App. 3d at 892, 801 N.E.2d at 1068.

Application of these four factors to the instant case supports a conclusion that Walton acted as Allstate's agent and accordingly, owed a duty to Allstate and not plaintiffs.  Based on the record in this case, we conclude that Walton had a fixed and permanent relationship with Allstate because the policy declarations list Walton as an Allstate agent.  Moreover, plaintiffs did not dispute that Walton was an Allstate agent.
  As such, we can infer Allstate first set Walton in motion to provide coverage to a prospective insured, controlled her actions and paid her, and she in turn protected Allstate's interests.  Since Walton is an insurance agent with a fixed and permanent relation to Allstate, Walton has duties and allegiances to Allstate.  See 
Galiher v. Spates
, 129 Ill. App. 2d 204, 207, 262 N.E.2d 626, 628 (1970). 
 
The extent of an agent's responsibility to a prospective insured is to promptly provide insurance coverage or to inform the party of the rejection of coverage.  In the instant case, despite the dispute concerning the amount of insurance coverage, plaintiffs received automobile damage
 
insurance.  Thus, plaintiffs were insured for automobile damage under the policy.  Therefore, we reject plaintiffs' contention that Walton owed and breached a duty of care to plaintiffs.  We also find plaintiffs' reliance on 
Black 
and 
Perelman 
misplaced.  This court in 
Black 
and 
Perelman 
concluded that the individual who sold the insured the insurance policy was the insured's agent and owed the insured a fiduciary duty.  Here, unlike in 
Black 
and 
Perelman
, we conclude that Walton was Allstate's agent and had a fiduciary relationship with Allstate, not plaintiffs.  Given this disparity in the facts of this case with 
Black 
and 
Perelman
, we do not find 
Black 
and 
Perelman 
dispositive.  Since we decide plaintiffs failed to sufficiently plead a cause of action for which relief can be granted based on 
respondeat superior
,
 
the trial court properly dismissed this count.

Plaintiffs next contend that a cause of action for estoppel was sufficiently pled and the trial court erred in dismissing this count.  To prevail in a cause of action for estoppel, a plaintiff must show: "(1) he was misled by the acts or statements of the insurer or its agents (2) reliance by the insured on the representations of the insurer (3) the reliance was reasonable and (4) the reliance was to the detriment of the insured."  
Meier v. Aetna Life & Casualty Standard Fire Insurance Co.
, 149 Ill. App. 3d 932, 938, 500 N.E.2d 1096, 1099 (1986).  In determining whether a claim for estoppel can be established, the reasonableness of the insured's reliance must be examined.  
Meier
, 149 Ill. App. 3d at 938-39, 500 N.E.2d at 1099.  A plaintiff bringing a cause of action based on estoppel ' "cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others." '  [citations.]  
Hubble v. O'Connor
, 291 Ill. App. 3d 974, 987, 684 N.E.2d 816, 825-26 (1997).  To prevail on an estoppel theory, "the plaintiff must have 'had no knowledge or means of knowing the true facts.' "  [citations.]  
Hubble
, 291 Ill. App. 3d at 987, 684 N.E.2d at 826.  

Plaintiffs claim that each element for estoppel was established.  First, plaintiffs contend that they were mislead by Walton and Allstate's acts and statements because Walton offered to sell them stated value coverage in the amount of $30,000.  Second, plaintiffs contend they relied on Walton's representation and paid enhanced premiums for more than a year.  Third, plaintiffs contend that the reliance was reasonable because Walton indicated that plaintiffs purchased a stated value policy, Allstate did not request additional information regarding the vehicle's value or condition prior to issuing the policy and the vehicle underwent a $20,000 restoration prior to the purchase of insurance.  Fourth and finally, plaintiffs contend that the reliance was detrimental because Allstate offered $12,000, or actual cash value, to settle the claim.  

Plaintiffs also rely on 
Meier v. Aetna Life & Casualty Standard Fire Insurance Co.
, 149 Ill. App. 3d 932, 500 N.E.2d 1096 (1986), to support their position that an insured can bring a cause of action for estoppel against an insurer.  The insurance agent in 
Meier
 contacted the insured and offered to sell $5,000 of stated value insurance for a vehicle as inducement to change insurance companies.  See 
Meier
, 149 Ill. App. 3d at 935, 500 N.E.2d at 1097.  In 
Meier
, the insurer offered $2,000 in settlement of the insured's claim after the vehicle was involved in a collision, but the insured rejected the offer, contending that the vehicle was insured for $5,000.  
Meier
, 149 Ill. App. 3d at 936, 500 N.E.2d at 1098.  The trial court awarded the insured $5,000.  See 
Meier
, 149 Ill. App. 3d at 940, 942, 500 N.E.2d at 1100, 1102.  This court affirmed the trial court's ruling reasoning that the insurer was estopped from denying the coverage amount under the stated value policy and the insurer's actions of delaying settlement amounted to vexatious and unreasonable conduct.  See 
Meier
, 149 Ill. App. 3d at 940, 942, 500 N.E.2d at 1100, 1102.  Plaintiffs claim that similar to the insured in 
Meier
, plaintiffs were misled by Walton into believing a stated value policy was procured, which estops Allstate from challenging the $30,000 benefits provided by the policy.  Plaintiffs also claim that the trial court failed to comply with the limitations of a motion to dismiss relating to the estoppel count, as well as the 
respondeat superior 
count, because the trial court ignored well-pled facts in the second amended complaint and the pleadings and supporting documents should have been interpreted in the light most favorable to plaintiffs. 

Allstate responds that the trial court properly dismissed the estoppel count of the second amended complaint because no facts could be pled entitling plaintiffs to relief.  Allstate claims that plaintiffs attempted to estop Allstate from relying on the appraisal to determine the amount of indemnification under the policy.  Allstate argues that an insured attempting to deny the effectiveness of a part of an insurance policy has a duty to read the policy and inform the insurer of any discrepancy prior to filing a claim.  
Floral Consultants, Ltd.
, 128 Ill. App. 3d at 176, 470 N.E.2d at 529.  Allstate contends that plaintiffs neglected this duty even though they had access to the policy, which contained clear and unambiguous language.  Allstate also contends that plaintiffs participated in an appraisal process to determine the vehicle's value at the time of loss, which is inconsistent with plaintiffs' position that a stated value policy was issued.  Allstate further contends that plaintiffs are attempting to use estoppel to increase the coverage provided under the policy from the vehicle's actual cash value of $12,000 to $30,000, which is prohibited.  
Nationwide Mutual Insurance Co. v. Filos, 
285 Ill. App. 3d 528, 534, 673 N.E.2d 1099, 1103 (1996).  Thus, Allstate claims that the trial court properly dismissed the estoppel count.  

Allstate further responds that the trial court properly complied with the limitations of a motion to dismiss.  Allstate argues that facts included in an exhibit negate inconsistent allegations of fact included in the body of a complaint.  
Metrick v. Chatz
, 266 Ill. App. 3d 649, 653, 639 N.E.2d 198, 162 (1994).  Allstate claims that the policy attached as an exhibit to plaintiffs' pleadings provides for an appraisal to determine the actual cash value of the vehicle, which is in direct contradiction with plaintiffs' allegation that they purchased a stated value policy.  Thus, Allstate contends, plaintiffs' second amended complaint and related exhibits demonstrate Allstate was entitled to judgment and the trial court properly dismissed the counts with prejudice.

We agree with Allstate that the trial court properly dismissed the estoppel count.  To address this contention, we must determine whether the facts set forth in plaintiffs' pleadings demonstrate that plaintiffs' reliance on Walton's acts or statements was reasonable.  We previously concluded that the policy clearly and unambiguously provided for actual cash value coverage and not stated value coverage.  Since plaintiffs possessed a copy of the policy, plaintiffs had the ability to learn of and to determine the policy's coverage in the event of a total loss.  A party neglecting to seek easily accessible information or ignoring obvious facts cannot prevail on an estoppel theory.  See 
Hubble
, 291 Ill. App. 3d at 987, 684 N.E.2d at 825-26.  We agree with the trial court that plaintiffs' failure to read the unambiguous policy and inform Allstate of any discrepancies in the policy and their understanding of coverage precludes plaintiffs from relying on estoppel.  Given the information accessible to plaintiffs regarding the policy's coverage, we conclude that plaintiffs' reliance was unreasonable.  

Also, we find 
Meier 
distinguishable from the instant case.  Unlike in 
Meier
, here, Walton did not contact plaintiffs in an attempt to lure plaintiffs from another insurance company.  Also unlike 
Meier
, the insurance policy in the instant case does not contain express language indicating that the policy issued was for stated value insurance; rather, the policy unambiguously provided for actual cash value indemnification.  Therefore, plaintiffs' reliance on 
Meier 
is misplaced.  We also disagree with plaintiffs that Walton's lack of further investigation regarding the vehicle's value demonstrates that their reliance was reasonable.  Moreover, we agree with Allstate that plaintiffs’ participation in the appraisal process but rejection of the appraised value is an attempt to increase insurance coverage, which cannot be accomplished through an estoppel claim.  See
 Meier
, 149 Ill. App. 3d 932, 500 N.E.2d 1096.  Due to plaintiffs' unreasonable reliance, no facts could be pled entitling plaintiffs to relief on an estoppel theory and, therefore, the trial court properly dismissed the estoppel count.

We further agree with Allstate that the trial court properly dismissed the 
respondeat superior 
and estoppel counts from the second amended complaint.  Interpreting all pleadings and related exhibits in the light most favorable to plaintiffs, we have concluded that the policy was unambiguous and an actual cash value policy for which no relief could be granted to plaintiffs under a 
respondeat superior 
or an estoppel theory.  Thus, the trial court properly dismissed these counts from the second amended complaint with prejudice. 

C.  Summary Judgment

Plaintiffs last issue on appeal is that the trial court erred in granting summary judgment in favor of Allstate and denying partial summary judgment in favor of plaintiffs.  Plaintiffs contend that the trial court erred in granting Allstate's motion for summary judgment because the finding was based on the prior erroneous finding that the policy was unambiguously an actual cash value policy.  Plaintiffs also contend that the trial court erred in not granting partial summary judgment in favor of plaintiffs because Allstate’s failure to timely pay the undisputed portion of the claim violated Illinois Department of Insurance Regulations and Illinois case law.  

Summary judgment is proper where the pleadings, depositions, admissions and affidavits demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  
Progressive Insurance Co. v. Universal Casualty Co.
, 347 Ill. App. 3d 10, 17, 807 N.E.2d 577, 
583 (2004), citing 735 ILCS 5/2-1005(c) (West 2002).  To determine if a genuine issue of material facts is present, courts must construe the pleadings, depositions, admissions and affidavits in the light most favorable to the nonmoving party. 
 Chubb Insurance Co. v. DeChambre
, ___ Ill. App. 3d ___, ___, 808 N.E.2d 37, 40 (2004).  We review a trial court’s granting or dismissal of summary judgment motions 
de novo
.  
DeChambre
, ___ Ill. App. 3d at ___, 808 N.E.2d at 40.  

Turning to plaintiffs’ first summary judgment contention, plaintiffs set forth three claims supporting its position that the trial court erred in granting Allstate's summary judgment motion.  First, the trial court erred in granting this motion because the trial court failed to consider material facts presented in the pleadings.  Second, the appraisal clause included in the policy does not support the granting of summary judgment in favor of Allstate.  Finally, section 155 does not preempt plaintiffs' cause of action under the Consumer Fraud Act.  We will now address each of these contentions.

Plaintiffs first contend that the trial court was obligated to review the facts that arose in this case after the parties began discovery.  Plaintiffs contend that the order dismissing the 
respondeat superior
 and estoppel counts was an interlocutory order that did not dispose of all the parties’ rights and liabilities and no discovery was yet conducted when the trial court entered the order.  See 
Peoples Gas Light & Coke Co. v. Austin
, 147 Ill. App. 3d 26, 31, 497 N.E.2d 790, 794 (1986).  However, when the motion for summary judgment was filed, some discovery was conducted.  Plaintiffs contend that Allstate's documents filed in response to production requests and answers to interrogatories demonstrated that Allstate issued plaintiffs a stated value policy.  Plaintiffs also contend that the trial court ignored relevant facts that raised genuine issues of material fact sufficient to preclude the granting of summary judgment.  Plaintiffs further contend that the trial court disregarded the contradictory positions that Allstate presented during litigation regarding the issuance of a stated value policy, which is apparent from the claim file, Allstate's correspondence and discovery conducted during litigation. 

Plaintiffs next contend that inclusion of the appraisal provision does not justify granting summary judgment in favor of Allstate on the breach of contract, Consumer Fraud Act and section 155 claims.  Plaintiffs contend that the appraisal provision was inapplicable to those claims because the claims are premised on Allstate's failure to honor the stated value policy issued to plaintiffs.  Plaintiffs cite 
Lundy v. Farmers Group, Inc.
, 322 Ill. App. 3d 214, 219, 750 N.E.2d 314, 318 (2001), in which this court held that inclusion of a provision in a contract does not establish that the parties' dispute is covered by the provision.  Plaintiffs contend that ample evidence existed demonstrating that Allstate sold plaintiffs a stated value policy, which renders the appraisal clause meaningless.  Thus, plaintiffs contend that the trial court erred in granting Allstate's motion for summary judgment based on the appraisal provision included in the policy.

Plaintiffs’ last contention regarding the propriety of the trial court's granting summary judgment in favor of Allstate is that section 155 does not preempt plaintiffs' cause of action under the Consumer Fraud Act.  The relevant inquiry regarding a Consumer Fraud Act claim is whether the alleged conduct implicates consumer protection issues.  
Central Diversey M.R.I. Center, Inc. v. Medical Management Sciences, Inc.
, 952 F. Supp. 575, 578 (N.D. Ill. 1996).  Section 155 “provides an extracontractual remedy for policyholders who have suffered unreasonable and vexatious conduct by insurers with respect to a claim under the policy.”  
Cramer v. Insurance Exchange Agency
, 174 Ill. 2d 513, 523-24, 675 N.E.2d 897, 902 (1996).  Section 155 sets forth a remedy for “insurer misconduct that does not rise to the level of a well-established tort.”  
Cramer
, 174 Ill. 2d at 527, 675 N.E.2d at 904.  

Plaintiffs claim that Allstate's reliance on 
Cramer v. Insurance Exchange Agency
, 174 Ill. 2d 513, 675 N.E.2d 897 (1996), to support its position that section 155 preempts claims based on the Consumer Fraud Act is misplaced.  Plaintiffs contend that 
Cramer 
stands for the proposition that an insured may bring any cause of action, except one based on the tort theory of bad faith, against the insurer.  Plaintiffs also contend that contrary to Allstate's position, 
Cramer 
does not hold or imply that section 155 has a preemptive effect on statutes such as the Consumer Fraud Act.  Plaintiffs further contend that Allstate charges insureds enhanced premiums for stated value coverage but treats the policy as the lesser of stated value or actual cash value for settlement purposes.  Plaintiffs claim that the trial court erred in granting Allstate’s motion for summary judgment on the basis that the Consumer Fraud Act claim was preempted by section 155.  

Allstate responds that the trial court properly granted summary judgment in favor of Allstate and denied plaintiffs' partial motion for summary judgment because plaintiffs complied with the appraisal provision of the unambiguous policy.  Allstate contends that plaintiffs attempt to introduce extrinsic evidence of events occurring after the formation of the contract to create ambiguity in an unambiguous policy.  However, under the "four corners rule," " '[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it.  It speaks for itself, and the intention with which it was executed must be determined from the language used.  It is not to be changed by extrinsic evidence.' " [citation.]  
Air Safety, Inc.
, 185 Ill. 2d at 462, 706 N.E.2d at 884.  Allstate also contends that the appraisal clause is a valid provision in the policy and substantial deference is given to an appraisal when the policy explicitly provides for determination by an appraiser.  See 
Lundy
, 322 Ill. App. 3d at 218-19, 750 N.E.2d at 315; 
General Casualty Co. v. Tracer Industries
, 
Inc.
, 285 Ill. App. 3d 418, 421, 674 N.E.2d 473, 474 (1996). 

Allstate further responds that the Consumer Fraud Act claim is preempted by section 155.  Allstate contends that the Consumer Fraud Act should not apply to simple breach of contract claims.  
Golembiewski v. Hallberg Insurance Agency, Inc.
, 262 Ill. App. 3d 1082, 1093, 635 N.E.2d 452, 460 (1994).  Allstate claims that the Consumer Fraud Act establishes a cause of action sounding in tort; however, plaintiffs' claim is premised on a breach of an insurance contract.  Allstate contends that a separate tort theory is unnecessary in this case because a contractual remedy is available pursuant to statute.  Allstate contends that any tort-based theory of recovery under the Consumer Fraud Act is preempted by section 155.

We conclude that section 155 preempts plaintiffs’ Consumer Fraud Act claim.  We recognize that "an insurer’s conduct may give rise to both a breach of contract action and a separate and independent tort action."  
Cramer
, 174 Ill. 2d at 528, 675 N.E.2d 904.  A plaintiff may bring an independent tort action for insurer misconduct if the plaintiff alleges and proves the elements of the separate tort.  
Cramer
, 174 Ill. 2d at 528, 675 N.E.2d 904.  Allegations of an insurer’s bad faith or unreasonable and vexatious conduct do not alone constitute a tort.  
Cramer
, 174 Ill. 2d at 528, 675 N.E.2d 897.  The supreme court held in 
Cramer
 that "irrespective of a statutory remedy, the existence of a contractual remedy would have made the tort theory unnecessary."  
Voyles v. Sandia Mortgage Corp.
, 196 Ill. 2d 288, 297, 751 N.E.2d 1126, 1132 (2001), citing 
Cramer
, 174 Ill. 2d 513, 675 N.E.2d 897.  In the instant case, plaintiffs brought a breach of contract claim alleging Allstate refused to tender the amount due under the insurance contract.  Based on 
Cramer
, a separate tort claim is not necessary and is inapplicable in the present case because a contractual remedy is available to plaintiffs.  

We reject plaintiffs' contention that the trial court ignored relevant facts that raised genuine issues of material fact.  We have concluded that Allstate issued an actual cash value policy that was not ambiguous, making analysis and reliance on extrinsic documents executed after the issuance of the policy inappropriate under the "four corners rule."  While we agree with plaintiffs that this court held in 
Lundy 
that a court must determine whether a dispute is covered by an arbitration or appraisal clause, we find the facts of 
Lundy 
distinguishable from the instant case because the insured in 
Lundy 
did not participate in the appraisal process that was disputed by the parties.  Here, plaintiffs participated in the appraisal process to determine the vehicle's value at the time of loss but rejected the resulting appraised value of $12,000.  We conclude that plaintiffs' participation in the appraisal process lends support to the ruling that the appraisal provision in the policy was both valid and applicable to the parties' dispute, which further supports the conclusion that an actual cash value policy was issued to plaintiffs.  Therefore, we agree with the trial court's ruling that no genuine issues of material fact exist and Allstate is entitled to judgment as a matter of law.

Plaintiffs' final contention on appeal is that the trial court erred in denying plaintiffs' motion for partial summary judgment premised on Allstate's failure to timely pay the undisputed portion of the settlement.  Plaintiffs contend that section 919.50 of the Illinois Department of Insurance Regulations (50 Ill. Adm. Code §
 
919.50 (2002)) provides that insurance companies must pay the portion of a claim in dispute within 30 days of affirming liability.  Illinois administrative rules and regulations have the force and effect of law.  
Comito v. Police Board
, 317 Ill. App. 3d 677, 691, 739 N.E.2d 942, 952 (2000).  Section 155  provides for sanctions against an insurance company for a delay in settling a claim if it appears to the court that such action or delay is unreasonable or vexatious.  215 ILCS 5/155 (West 1998).  Plaintiffs contend that after establishing a settlement amount, any further delay by the insurer in paying that amount is vexatious and unreasonable.  See 
Marcheschi v. Illinois Farmers Insurance Co.
, 298 Ill. App. 3d 306, 313, 698 N.E.2d 683, 688 (1998).  

Pursuant to section 155, the court may allow a plaintiff to recover reasonable attorney fees, other costs and a penalty if an insurer's actions or delay in settling a claim is vexatious and unreasonable.  215 ILCS 5/155 (West 1998).  These recoverable costs are an "extracontractual remedy intended to make suits by policyholders economically feasible and punish insurance companies for misconduct."  
McGee v. State Farm Fire & Casualty Co.
, 315 Ill. App. 3d 673, 681, 734 N.E.2d 144, 151 (2000), citing 
Cramer
, 174 Ill. 2d 513, 675 N.E.2d 682.  The relevant inquiry underlying a section 155 claim is "whether an insurer's conduct is vexatious and unreasonable."  
McGee
, 315 Ill. App. 3d at 681, 734 N.E.2d at 151.  We will not reverse a trial court's finding regarding whether an insurer's conduct is vexatious and unreasonable absent an abuse of discretion.  
McGee
, 315 Ill. App. 3d at 681, 734 N.E.2d at 151.

Plaintiffs contend that Allstate's failure to pay the undisputed portion of the insurance claim for nearly a year and half was unreasonable and vexatious.  To support its position, plaintiffs rely on
 Millers Mutual Insurance Ass'n of Illinois v. House
, 286 Ill. App. 3d 378, 675 N.E.2d 1037 (1997).  In 
House
, a dispute arose regarding the amount of insurance coverage the insured was entitled to recover, but the insurer and insured agreed that the insured was entitled to at least $40,000.  
House
, 286 Ill. App. 3d at 385, 675 N.E.2d at 1042.  The insurer withheld payment of the $40,000 while it litigated the coverage action.  
House
, 286 Ill. App. 3d at 386, 675 N.E.2d at 1042.  The trial court held that the insurer's failure to tender the $40,000 undisputed portion of the claim constituted an unreasonable and vexatious breach of the insurance contract in violation of section 155 given that the insurer consciously decided to force the insured to litigate an issue that should have been arbitrated.  
House
, 286 Ill. App. 3d at 385, 675 N.E.2d at 1042.
  This court upheld the trial court's holding that the delay in payment was an unreasonable and vexatious delay when the insurer knew the insured would have to wait for payment until the trial court reached a decision in the case and the insurer rejected the insured's demand for arbitration.  
House
, 286 Ill. App. 3d at 387, 675 N.E.2d at 1044.  Plaintiffs contend that in the present case, Allstate did not pay the undisputed portion of the claim for over 1½ years, which was an unreasonable and vexatious delay.  Since the delay in paying the undisputed portion of the plaintiffs' claim was vexatious and unreasonable, plaintiffs claim, the trial court erroneously denied the plaintiffs' motion for partial summary judgment. 

We cannot conclude that Allstate's payment of the vehicle's appraised value approximately a year and half after completion of the appraisal process amounts to an unreasonable and vexatious delay given the facts of this case.  
House 
is distinguishable from the instant case.  Unlike in 
House
, no indication exists in the record that Allstate consciously decided to force plaintiffs to litigate an issue that could have been arbitrated.  Rather, Allstate offered plaintiffs the appraised value of the vehicle in compliance with the limit of liability and right to appraisal provisions of the policy.  Plaintiffs, however, rejected the offer contending that Allstate's liability under the policy was $30,000.  Plaintiffs chose to initiate legal proceedings to recover $30,000 as indemnification relating to the policy instead of accepting the vehicle's actual cash value determined in accordance with the policy's appraisal provision.  Based on a review of the record in this case, we conclude that the trial court did not abuse its discretion in denying plaintiffs' motion for partial summary judgment because Allstate's delay in rendering payment was not unreasonable and vexatious.

III.  CONCLUSION

For all of the foregoing reasons, the judgment of the trial court is affirmed. 

Affirmed.

O'MARA FROSSARD, P.J., and FITZGERALD SMITH, J., concur.

FOOTNOTES
1:  Walton was a defendant in the underlying suit.  The claims against Walton were dismissed and Walton is not a party in this appeal.