FIFTH DIVISION
SEPTEMBER 22, 2006

No. 1-05-1921

| | | |
|---|---|---|
| FOUNDERS INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| TAMIETHA R. WHITE and ROSZETTA | ) | |
| WILLIAMS, As Guardian and Next Friend | ) | |
| Of KRISTINA WILLIAMS, a Minor, | ) | Honorable |
| | ) | Dorothy Kirie Kinnaird, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE TULLY delivered the opinion of the court:

In this declaratory judgment action, the trial court entered summary judgment in favor of plaintiff Founders Insurance Company, finding that it had no duty to defend or indemnify defendant Tamietha White (White), who was the driver in a car-pedestrian accident. The sole issue on appeal is whether the trial court erred in finding that Great Northern Insurance Agency (Great Northern), the company from which White obtained insurance, was not an agent of plaintiff. We affirm.

In December 2002, White was driving her car when she was involved in an accident with a pedestrian, the minor defendant Kristina Williams. Defendant Roszetta Williams, as guardian and next friend of the minor, filed a personal injury action against White. Ultimately, plaintiff denied coverage to White under her insurance policy because at the time of the accident White was operating a vehicle which she owned, which was outside the coverage of her non-owners insurance policy.

The undisputed facts established that on September 12, 2002, White, with the assistance of Great Northern, obtained a non-owners vehicle insurance policy issued by plaintiff. The terms of the policy only provide coverage to White when she is operating a vehicle which she does not own.

On October 25, 2004, plaintiff filed a revised motion for summary judgment, which is the subject of this appeal. In this motion, plaintiff asserted that Great Northern was not its agent and if White had any dispute regarding the type of insurance coverage she applied for in September 2002, White would have to raise such a claim against Great Northern. Plaintiff further asserted that the terms of White's non-owners policy were clear and unambiguous and that White was not entitled to insurance coverage for the December 2002 accident because she was operating a vehicle that she owned at the time of the accident. Plaintiff also observed that an earlier default judgment had been entered against White related to this action.[1]

Plaintiff attached the affidavits of its senior claim/coverage analyst (Mauricio

---

[1]The default judgment against White was entered on September 25, 2003.

Valdivia), its vice president of underwriting (David Mirza), and Great Northern's underwriting manager (Richard Pepelea). Plaintiff also attached the transcript of the discovery deposition of White and White's application for insurance with plaintiff.

Valdivia averred that White operated a vehicle that she owned at the time of the accident and therefore was not covered by her non-owners policy. Mirza attested that Great Northern was an independent insurance broker and had never been plaintiff's agent. Mirza further attested that on September 12, 2002, and at all relevant times Great Northern had no fixed or permanent relationship with plaintiff.

Pepelea averred that on September 12, 2002, Great Northern offered insurance products to the public for approximately 15 to 20 different insurers, including plaintiff, and that Great Northern was an independent insurance broker. Pepelea further averred that: (1) neither plaintiff nor any insurer exercised any control over Great Northern's actions with the public; (2) Great Northern had no fixed or permanent relationship with any of those 15 to 20 insurers; (3) Great Northern possessed insurance applications for those 15 to 20 insurers; and (4) Great Northern "upon determining which of these 15 to 20 insurers would best suit our clients' specific needs, would, together with and with [*sic*] the assistance of the client, complete the [a]pplication from that insurer."

In particular, Pepelea attested that White was placed with plaintiff, as opposed to another insurer, because plaintiff "offered the most competitive rates for a Non-Owners Policy for someone in Tamietha White's position at that time." Pepelea further attested that on September 12, 2002, Great Northern acted as White's agent and acted to

protect and further her interests.

Plaintiff requested the court to enter a finding that plaintiff had no duty to defend or indemnify White in connection with defendant's claim, that any issue in connection with the scope of coverage requested by White in September 2002 was not attributable to plaintiff, and that defendant was not entitled to recovery under White's non-owners policy.

On December 27, 2004, defendant filed a response to plaintiff's motion for summary judgment and a cross-motion for summary judgment, asserting that Great Northern acted as an agent of plaintiff when White obtained her non-owners policy on September 12, 2002. Specifically, defendant contended that White went to Great Northern, signed an application of insurance bearing plaintiff's name and identifying Great Northern as an agent of plaintiff, paid the required insurance premium, and left Great Northern's office with insurance coverage in effect. Defendant further contended that plaintiff exercised control over Great Northern through plaintiff's written guidelines in a document identified as "Producer Agreement."

Defendant attached the transcript of White's deposition, White's insurance application, and the "Producer Agreement" between plaintiff and Great Northern.

On February 23, 2005, defendant filed a supplemental response to plaintiff's motion for summary judgment, asserting primarily that Great Northern was an agent of plaintiff for the purposes of issuing and binding coverage. Defendant further asserted that Great Northern committed various errors and provided White with the incorrect

coverage and that plaintiff was responsible for Great Northern's error. Consequently, defendant contended that plaintiff was obligated to provide insurance coverage to White.

Defendant attached to the supplemental response, in pertinent part, the transcript of the discovery deposition of Richard Pepelea (underwriting manager at Great Northern). Pepelea testified that Great Northern financed White's premium that she owed to plaintiff for the non-owner's policy. When asked about the written guidelines provided by plaintiff, Pepelea stated that Great Northern received such underwriting guideline books from all insurance companies that Great Northern worked with. Pepelea further stated that Great Northern was obligated to comply with the producer agreements provided by all of the insurance companies. Pepelea was unaware of any circumstances in which Great Northern had the ability to bind insurance coverage for plaintiff.

Defendant also attached the transcript of the discovery deposition of David Mirza (plaintiff's vice president of underwriting). Mirza testified that plaintiff provided Great Northern with an underwriting guidelines book, which describes specific underwriting rules, acceptable makes and models of vehicles, and insurance premium rates. Mirza stated that Great Northern did not have the ability to bind plaintiff to insurance coverage and that plaintiff had "the final say" regarding binding coverage and acceptance of risk.

In regard to White's coverage, Mirza explained that when White left Great Northern's office on September 12, 2002, she had insurance coverage effective

September 13, 2002. Mirza further explained that when plaintiff reviewed White's application at a later date, White's coverage was "retroactive back to September 13th."

On March 8, 2005, plaintiff responded to defendant's pleadings and essentially repeated its earlier arguments. Specifically, plaintiff asserted that the evidence clearly demonstrated that Great Northern had no fixed and permanent relationship with plaintiff and that Great Northern did not have the power or authority to bind plaintiff for any risks.

On March 18, 2005, following a hearing and after reviewing the parties' pleadings, the circuit court granted plaintiff's motion for summary judgment. The court found that no question of material fact existed and that Great Northern was not an agent of plaintiff. The court further found that any issue regarding the scope or type of coverage initially requested by White could not be imputed to plaintiff. Accordingly, the court found that plaintiff had no duty to defend or indemnify White in connection with defendant's lawsuit regarding the December 2002 accident and that defendant was not entitled to any recovery under White's non-owners policy.

On appeal, defendant admits that the non-owners insurance policy purchased by White does not afford coverage for the underlying accident. To circumvent this undisputed result, defendant posits that White meant to purchase or should have purchased an owners policy and, therefore, Great Northern procured the wrong policy for White. In turn, the alleged mistake by Great Northern should be imputed to plaintiff, which then should cover White under a policy that she did not buy and, therefore, does not exist, *i.e.* an owners policy. Defendant's reasoning is based on the allegation that

Great Northern is an agent of plaintiff. Accordingly, defendant only contests the trial court's findings that Great Northern was not an agent of plaintiff.

We review de novo a circuit court's entry of summary judgment. Home Insurance Co. v. Cincinnati Insurance Co., 213 Ill. 2d 307, 315 (2004). When conducting such a review, we may affirm a grant of summary judgment on any basis contained in the record, regardless of whether the lower court relied upon that basis. Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd., 216 Ill. 2d 294, 305 (2005). An entry for summary judgment is proper where, "when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Northern Illinois Emergency Physicians, 216 Ill. 2d at 305.

In this case, we must determine whether there is a genuine question of material fact regarding defendant's assertion that Great Northern acted as plaintiff's agent when it assisted White in obtaining her non-owners policy. An insurance broker owes a duty to the insured, while an insurance agent owes a duty to the insurer. Young v. Allstate Insurance Co., 351 Ill. App. 3d 151, 162 (2004). To determine whether a certain individual acted as a broker or an agent, we must analyze the following four factors: (1) who first set that individual in motion; (2) who controlled that individual's action; (3) who paid that individual; and (4) whose interests that individual was protecting. Young, 351 Ill. App. 3d at 162-63; Farmers Automobile Insurance Ass'n v. Gitelson, 344 Ill. App. 3d

888, 892 (2003).

Here, we find that Great Northern did not act as plaintiff's agent, but instead served as White's agent. Notably, White indisputably set Great Northern in motion when White sought Great Northern's assistance in procuring automobile insurance. Moreover, as Pepelea testified, Great Northern worked with 15 to 20 insurance companies and White obtained an insurance policy from plaintiff because plaintiff offered the most competitive rates for a non-owners policy for someone in White's position. In accordance with White's request, Great Northern assisted her in acquiring the non-owners policy from plaintiff. Furthermore, for the benefit of White, Great Northern financed a portion of the premium owed by White to plaintiff. Moreover, both Pepelea and Mirza unequivocally attested that Great Northern was not plaintiff's agent and that Great Northern was an independent insurance broker. After reviewing this evidence in light of the relevant factors, we find that the circuit court properly concluded that Great Northern was not an agent of plaintiff.

We are not persuaded by defendant's interpretation of the evidence regarding the relationship between plaintiff and Great Northern. Defendant directs our attention to a variety of clauses in the underwriting guidelines issued by plaintiff to Great Northern regarding plaintiff's underwriting policies, wherein plaintiff establishes certain requirements that Great Northern must follow. Defendant further notes that, according to those guidelines, Great Northern was authorized to bind insurance coverage if it followed plaintiff's published underwriting guidelines. Defendant also directs our

attention to the fact that Great Northern collected a premium from White on behalf of plaintiff.

However, after reviewing the cited guidelines in conjunction with the other evidence, we find that these guidelines do not demonstrate that Great Northern was an agent of plaintiff. Notably, as Pepelea testified in his deposition, Great Northern received similar guideline books from all of the insurance companies that Great Northern worked with. Moreover, in regard to defendant's allegation that Great Northern could bind insurance coverage, we note that the referenced clause provides: "[Great Northern] is specifically prohibited and not authorized to bind, execute, modify or issue insurance contracts, except as provided in [plaintiff's] published underwriting guidelines."

This clause, contrary to defendant's characterization of it, establishes that Great Northern was not expressly authorized to bind insurance coverage for plaintiff, but instead had that ability only in limited circumstances.

We acknowledge, as defendant observes, that Great Northern collected a premium from White on behalf of plaintiff and, under limited circumstances, may have had authority to bind insurance coverage for plaintiff. However, these facts are insufficient to establish that Great Northern was plaintiff's agent. Put simply, "[t]he mere

fact that business transactions occurred or that a contractual relationship existed [between two business entities] is insufficient to support" a finding of a fiduciary relationship. State Security Insurance Co. v. Frank B. Hall & Co., 258 Ill. App. 3d 588, 597 (1994).

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

McNULTY, P.J., and O'MALLEY, J., concur.